E. V. O'NEAL ET AL. v. BUSH & TILLAR.

No. 2368.   Decided February 24, 1915—February 14, 1917.

**1.—Vendor and Purchaser—Rescission—Forfeiture.**

Purchasers of land under executory contract paying $10,000.00 cash and agreeing to pay $15,000.00 on a named date, were on such payment to receive conveyance with balance of purchase money, secured by vendor's lien. In default of such payment the $10,000.00 was to be retained by the vendors as liquidated damages for the vendees' failure to perform.   On such default, vendors, retaining the forfeited $10,000.00, agreed, for the benefit of the vendees, to carry on negotiations for the sale of the land already commenced by the vendees with other parties, allowing them (the original vendees) all realized in excess of the purchase price originally agreed on.   Held:

1. The vendors, by retaining the damages agreed on for default, waived thereby their right to claim also a forfeiture of the contract as against such vendees and became liable for the amount in excess of the original purchase price realized by them on such resale directly to others. (P. 254.)

2. The orignal vendors, still holding the legal title, could, by conveyance directly to others, with the consent of their vendees holding only an equity, transfer to such others both the legal and the equitable title to the land. (Pp. 254, 255.)

3. One who undertakes to act as agent or trustee for another can not appropriate the benefits of such transaction to himself and if he does so he becomes liable to his principal therefor. (Pp. 254, 255.)

## 2.—Procedure.

There are no forms of action in Texas procedure and a party may recover whatever relief the facts alleged and proven show him entitled to, whether damages, rescission, or enforcement of contract. (Pp. 255, 256.)

### ON REHEARING.

## 3.—Same—Damages—Enforcement of Contract.

On allegation and proof that the defendants had agreed that plaintiffs, in settlement for their equitable interest in land, should have whatever in excess of a certain sum was realized from its sale by defendants direct to other parties, the latter were liable, *prima facie*, for the face value of a note taken by them for such excess and made payable to another party in settlement of their debt to him. (Pp. 257, 258.)

## 4.—Notes—Value—Charge—Omission.

Where it was sought to hold one occupying fiduciary relations for the amount of a note realized on the sale of property so held, the failure to instruct that the measure of recovery was the value, rather than the amount of such note was error of omission merely, and not available in the absence of request for submission of the issue as to the actual value of the note. (P. 258.)

## 5.—Charge—Judgment—Damages.

Vendees who had made part payment on land and default as to the remainder, under agreement that such cash paid was to be retained as liquidated damages in case of their nonperformance, after default agreed with vendor that the land might be conveyed to a third party by their vendor, who should then account to them for any amount above the price agreed upon which might be realized from such sale. On suit for such excess price realized, and under a charge permitting them to recover the difference between the price originally agreed upon and that realized from the third party on sale to him, a verdict for the amount of that difference and also for the amount paid by the vendees under their original contract was unwarranted, and the judgment is affirmed only on remittitur of such excess caused by including the original cash payment. (Pp. 258-260.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Tarrant County.

E. V. O'Neal and others sued Bush & Tillar, and obtained judgment for $29,095.68. Defendants appealed and the judgment was reversed and rendered in favor of appellants. Appellees thereupon obtained writ of error.

*Capps, Cantey, Hanger & Short* and *David B. Trammell,* for plaintiffs in error.—The attempted renunciation on the part of Tillar (acting for the firm of Bush & Tillar), being clearly for the purpose only of making a sale of the property to the purchasers secured by plaintiffs

in error (and with whom he had agreed to complete negotiations of sale as the agent of plaintiffs in error) on his own behalf, the relation of principal and agent will be deemed to have continued and the agent held to be a trustee for his principal as to the proceeds of the sale over the sum of $6.50 per acre, which was at least the sum of $15,000. Fountain Coal Co. v. Phelps, 95 Ind., 271; Witte v. Storm, 139 S. W. (Mo.), 384, 387; Kimball v. Ranney, 122 Mich., 160,. 80 N. W., 992, 80 Am. St. Rep., 548, 46 L. R. A., 403; Ex parte Lacy, 6 Vesey, 625.

"The duty of an attorney to be true to his client, or an agent to be faithful to his principal, does not cease when the employment ends, and it can not be renounced at will by the termination of the relation. It is as sacred and inviolable after as before the expiration of its term." Therefore, if it be conceded (which is not done) that Tillar, acting for the firm of Bush & Tillar, after becoming the agent of plaintiffs in error for the sale of the land in question to Rule and Allen, could, at the time and under the circumstances in which he attempted to do so, renounce his agency and terminate the relation of principal and agent theretofore existing between defendants in error and plaintiffs in error,. he clearly could not then conclude a sale on behalf of his firm with Rule and Allen, the parties secured by plaintiff in error as purchasers of the land in question, and the parties with whom Tillar had undertaken as agent for plaintiffs in error to conclude negotiations for the sale of and make deed to the very same land, for a price in excess of the amount he had agreed with plaintiffs in error to accept therefor and refuse to account to plaintiffs in error for such excess. Plaintiffs in error's suit for an accounting of such excess was, therefore, properly brought, and the honorable Court of Civil Appeals for the Sixth District was in error in holding otherwise. Trice v. Comstock, 121 Fed.,. 620, 61 L. R. A., 176, 180; Morgan v. Aldrich, 114 Mo. App., 700,. 91 S. W., 1024, 1026; Eoff v. Irvine, 108 Mo., 378, 383, 18 S. W., 907,. 908; Carson v. Fogg, 34 Wash., 448, 76 Pac., 112, 113; Robb v. Green,. 2 Q. B., 315, 317-320; Lewis v. Smellie, 73 L. T. N. S., 226-228.

That Tillar, after having waived a forfeiture, could not rescind the contract between Bush & Tillar and plaintiffs in error without first giving notice of his intention so to do, if payment of the fifteen thousand dollars then due was not made within a reasonable time, and that his arbitrary declaration that he intended to "scoop the whole thing" was ineffective as a rescission: Scarborough v. Arrant, 25 Texas, 129,. 135-7; Redden v. Smith, 65 Texas, 26; Tom v. Wollhoeffer, 61 Texas, 277; Estell v. Cole, 62 Texas, 695; Moore v. Geisecke, 76 Texas, 543, 13 S. W.,. 290; Ball v. Belden, 126 S. W., 20, 22, and authorities cited; Erwin v. Daniels, 34 Texas Civ. App., 378, 79 S. W., 61, 62; Monson v. Bragdon, 159 Ill., 61, 42 N. E., 383; Mudgett v. Clay, 5 Wash., 103, 31 Pac., 424; Watson v. White, 152 Ill., 364, 38 N. E., 902; Keater v. Ferguson, 20 S. D., 473, 107 N. W., 678, 129 Am. St. Rep., 947; Maffett v. Oregon & C. R. Co., 46 Ore., 443, 80 Pac., 489, 494; Graham v. Merchant, 43 Ore., 294, 72 Pac., 1083, 1090.

That the execution of a contract of sale by Bush & Tillar to Allen and Rule (the latter having knowledge of plaintiffs in error's rights) would be ineffective as a rescission: Scarborough v. Arrant, 25 Texas, 129; Hild v. Linne, 45 Texas, 476.

An unconditional refusal on the part of one party to a contract to perform relieves the other party from any obligation to make further tender. Sanborn v. E. R. Roach Drug Co., 137 S. W., 182; Auxier v. Taylor, 102 Iowa, 673, 72 N. W., 291; Goodman v. Haynes Automobile Co., 205 Fed., 352, 354, and authorities cited; Stokes v. McKay, 147 N. Y., 223, 41 N. E., 496, 499.

That plaintiffs in error by virtue of the contract of October 30, 1906, became vested with an equitable estate or interest in the land in controversy: Summerhill v. Hanner, 72 Texas, 224, 227; Haynie Mercantile Co. v. Miller, 41 Texas Civ. App., 79, 92 S. W., 262; Saunderson v. Wellsford, 116 S. W., 382, 385; Slaughter v. Coke County, 34 Texas Civ. App., 598, 79 S. W., 863; Taber v. State, 38 Texas Civ. App., 235, 85 S. W., 835, 837; Wallace v. Wilcox, 27 Texas, 60; Secrest v. Jones, 21 Texas, 131, 132.

That the interest of plaintiffs in error passed by way of estoppel to Allen and Rule: Mayer v. Ramsey, 46 Texas, 371; Stewart v. Crosby, 26 S. W., 138, 139; Hughes v. Landrum, 40 Texas Civ. App., 196, 89 S. W., 85; Daugherty v. Templeton, 110 S. W., 553; White v. White, 95 S. W., 733, 739; Dennison v. Ely, 1 Barb. (N. Y.), 610.

That the representation of plaintiffs in error to Allen and Rule that a deed or contract from Bush & Tillar to them would be effective to pass plaintiffs in error's interest in the land, being a representation as to the law of a foreign state, was a representation of fact: Wood v. Roeder, 50 Neb., 476, 70 N. W., 21; Haven v. Foster, 9 Pick. (Mass.), 112, 19 Am. Dec., 352, 357.

If it be conceded that the question whether or not the $15,000 of notes received by defendants in error for the land in excess of $6.50 per acre, were worth their face value, was an issuable fact for the jury, defendants in error requested no special instruction submitting such issue. The charge of the court being correct as far as it went, and the error, if any, in not requiring a finding of the jury as to the actual or market value of the $15,000 of notes being one of omission, defendants in error, not having by proper special charge sought to have such issue submitted, could not be heard on appeal to complain of the court's failure to submit same. Robinson v. Varnell, 16 Texas, 382, 387; Beazley v. Denson, 40 Texas, 416, 434; Shumard v. Johnson, 66 Texas, 70, 73; San Antonio Traction Co. v. Settle, 104 Texas, 142, 145, 135 S. W., 116; Coffee v. Chicago, R. I. & G. Ry. Co., 104 Texas, 127, 134 S. W., 1174; Wilkinson v. Johnston, 83 Texas, 392, 395, 18 S. W., 746; Texas & P. Ry. Co. v. Eberheart, 91 Texas, 323; Parks v. San Antonio Traction Co., 100 Texas, 222; Yellow Pine Oil Co. v. Noble, 100 Texas, 358; Missouri, K. & T. Ry. Co. of Texas v. Williams, 117 S. W., 1043, 1047; St. Louis S. W. Ry. Co. of Texas v. McArthur,

31 Texas Civ. App., 205, 72 S. W., 76, 77; Missouri, K. & T. Ry. Co. of Texas v. Connelly, 14 Texas Civ. App., 529, 39 S. W., 145, 147; Missouri, K. & T. Ry. Co. of Texas v. McDuffey, 109 S. W., 1104, 1107; Missouri, K. & T. Ry. Co. of Texas v. Lasater, 115 S. W., 103, 104; Bee Candy Manufacturing Co. v. Maibaum, 158 S. W., 575, 576.

Conceding (for the purpose of this proposition only) that Pyron would be precluded from recovering if he accepted any part of the excess of $15,000 over $6.50 per acre in the price for which the land in question was sold to Rule and Allen, as a commission on such sale, it is apparent that such issue was a defensive one solely. It is further clear that the charge of the trial court did not exclude such issue from the jury, but merely omitted to require the finding of the jury thereupon. The error, therefore, if any, was one of omission; and in order to enable defendants in error to be heard to complain thereof on appeal, their assignment would have to be bottomed on an appropriate requested special instruction submitting such issue. No such special instruction having been requested by them, the Court of Civil Appeals erred in not holding defendants in error precluded thereby from urging the point under consideration. Same authorities.

_Flournoy, Smith & Storer_, with whom, on motion for rehearing, were _Clendennen, Simmons & Cameron_, for defendants in error.—The evidence offered fails to establish a contract between Tillar, representing the firm of Bush & Tillar, and appellees, by which Tillar bound himself to make and conclude for appellees and Bush & Tillar the trade with Rule and Allen alleged to have been negotiated by Pyron, and contracts and conveyances to Rule and Allen of the Bush & Tillar lands, the evidence showing that there was no intention on the part of either party to make a binding contract to that effect, the evidence showing nothing more than a disposition on the part of Tillar to aid them in making the contract. Anson on Contract, sec. 2, star, p. 18; 9 Cyc., p. 276d; Erwin v. Erwin, 25 Ala., 236; Hermon v. James, 7 Ind., 263; Bright v. Bright, 8 B. Monroe, 194; Ulrich v. Arnold (Pa.), 13 Atl., 831; Tucker v. Bitting, 32 Pa. St., 428.

When it became apparent to Tillar after he got to Kansas City that no contract could be made with Rule and Allen which would preserve to him his rights under the Baker and O'Neal contract as to terms of payment, he was absolved from his alleged verbal agreement with appellees and they being in default on their contract of October 27, 1906, Tillar was at liberty to make a sale of the land for the sole benefit of his own firm and on such terms as he desired. Burch v. Hester, 109 S. W., 399; English v. George, 117 S. W., 996.

The contract of October 27, 1906, between appellees and appellant being an executory contract for the sale of land, and appellees having defaulted in the payment provided for therein, appellant had the right to treat the contract as at an end and to deal with the land as his own, subject to appellees' right under the circumstances, to promptly make

the payment in default in order to preserve their rights. Lipscomb v. Fuqua, 121 S. W., 193.

Tillar's contract with Sidney P. Allen being wholly for the firm of Bush & Tillar, did not interfere with or injure any rights appellees may have had in the land at the time of the making thereof. Hill v. Conrad, 91 Texas, 341.

The fact that Bush & Tillar were not able to close a contract with Rule and Allen on the terms of the alleged verbal agreement, but, if they traded at all, had to trade on terms and payments entirely different from those provided in their contract of October 27, 1906, and the said verbal agreement, and had to sell their land wholly on credit and on longer and more favorable terms to the purchaser, they the said Bush & Tillar, were absolved from their alleged verbal agreement and had a right to sell the lands on their own behalf. Burch v. Hester, 109 S. W., 399; English v. George, 117 S. W., 996.

It being shown by the undisputed evidence that Ben J. Tillar, acting for Bush & Tillar, repudiated the alleged verbal agreement with appellees to sell the land and account to them for part of the proceeds, and notified appellees that he had done so and would sell the land for account of Bush & Tillar solely, such notice being given appellees at least two days before the contract of sale between Bush & Tillar and Allen was executed, and at a time when his refusal to carry out such verbal agreement did not operate as a fraud upon the rights of appellees, such repudiation and notice put an end to the verbal agreement and relieved Bush & Tillar from all obligation and liability thereon. Johnson v. Portwood, 89 Texas, 249; Dunphy v. Ryan, 116 U. S., 494; Ponce v. McWhorter, 50 Texas, 569; Thomas v. Irrigation Co., 80 Texas, 550; Dietrich v. Heintz, 99 S. W., 417; Sprague v. Haines, 68 Texas, 216; Bradley v. Owsley, 74 Texas, 70, S. C., 19 S. W., 340; Cobb v. Johnson, 101 Texas, 443.

On motion for rehearing:

According to the findings of fact of the Court of Civil Appeals the excess over $6.50 per acre for which the land was sold to Rule and Allen was $15,000—not $25,000—and the agreement which plaintiffs in error claimed was made between them and Tillar was that he should account to them for the excess over $6.50 per acre for which the land was sold to Rule and Allen. It was, therefore, error for this court to affirm the judgment of the District Court, which was for $25,000 and interest; and it was improper for the Supreme Court to have affirmed said judgment without requiring a remittitur of at least two-fifths of the judgment of the District Court. Rev. Stats., art. 1590; Choate v. S. A. & A. P. Ry. Co., 91 Texas, 406.

The Supreme Court erred in affirming the judgment of the trial court because in so doing it resolved a disputed issue of fact in favor of plaintiffs, towit: it assumed that the value of notes taken in consideration for the sale to Rule and Allen were worth par, when there was testimony in the record to the effect that they were not worth par,

which issue was also assumed against Bush & Tillar in the trial court by his charge to the jury to return a verdict in plaintiffs' favor for the amount defendants realized or secured satisfactory contracts for the payment of, in excess of $6.50 per acre in their sale to Allen.   Tompkins v. Perry, 128 S. W., 1164; Brightman v. Reeves, 21 Texas, 77; First Natl. Bank v. Dickson (Dak.), 40 N. W., 351; Booth v. Powers, 56 N. Y., 22; Zeigler v. Wells, 23 Cal., 179; Griggs v. Day (N. Y.), 32 N. E., 612; McPeters v. Phillips, 46 Ala., 496; Ray v. Light, 34 Ark., 430; Nininger v. Banning, 7 Minn., 274; Griffith v. Burden, 35 Iowa, 141.

Authorities on point that recovery must be had on the case that is pleaded:   J. I. Case Plow Works v. Morris, 42 S. W., 652; Wisby v. Boyce, 27 S. W., 590; Middlebrook v. Zapp, 73 Texas, 29; Galveston, etc., Ry. v. Scott, 44 S. W., 592; Longcope v. Bruce, 44 Texas, 437; Cooper v. Laughlin, 75 Texas, 527.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

We copy the following statement of facts from the opinion of the Court of Civil Appeals:

"Appellants owned about 50,000 acres of land in Scurry and other counties, which they contracted to sell to appellees.   The contract was entered into on October 27, 1906, and was evidenced by a writing of that date.   The price to be paid by appellees for the land was $6.50 per acre.   They paid $10,000 on the purchase price at the time the contract was executed.   By the terms of the contract $15,000 of the part remaining unpaid of the purchase price was to be paid May 11, 1907, and the remainder thereof at later dates.   It was stipulated that in the event appellees should violate any of the terms and conditions of the contract and 'fail to perfect, consummate and carry out' same, the $10,000 paid by them should not 'be 'considered or become a partial payment upon the lands,' but should be 'received, held and kept' by appellants as liquidated damages.   The $15,000 due by appellees May 11, 1907, was not paid by them then nor afterwards.   On that day appellant Tillar and his attorney and appellees Baker, J. F. O'Neal and W. E. O'Neal had a conference in Mineral Wells.   The testimony as to what then occurred was conflicting.   That on the part of appellants was that Tillar then demanded payment of the $15,000, and appellees refusing to pay, that he declared their rights under the contract to have been thereby forfeited.   That on the part of appellees was that payment of the $15,000 was waived by Tillar, and that he agreed to go to Kansas City and act for them in closing a deal they claimed they had pending there with one Allen and one Rule, subject to an arrangement with Tillar as to certain details not specified in the testimony, whereby Allen and Rule were to assume their contract with appellants and pay them (appellees) the sum of $25,000.   As a result of the conference, on the Monday following said Saturday Tillar and Baker and J. F. O'Neal did go to Kansas City, where negotiations between Tillar

and Allen and Rule were carried on, resulting in the consummation on May 22 of a contract between Tillar and Allen and Rule, whereby appellants sold the land to Allen· and Rule, and agreed to convey same to Allen for $6.50 per acre, the price appellees had agreed to pay for it, and $15,000. Appellees claimed that it was understood and agreed between themselves and Tillar that they should own all in excess of $6.50 per acre Allen and Rule might agree to pay for the land, that Tillar, in negotiating and consummating the sale to Allen and Rule, acted for them as well as for appellants, and that they were entitled to demand and receive of appellants as their own the excess over $6.50 per acre realized by appellants as a result of the sale to Allen and Rule. Their suit against appellants was commenced and prosecuted on this theory. Appellants denied the existence of such an understanding and agreement, and, among other things, claimed that appellees were advised by Tillar two days before he consummated the sale to Allen and Rule that he denied their right to any of the proceeds of the sale he was negotiating, and would refuse to account to them for any part of such proceeds. The sale by appellants to Allen and Rule was entirely on a credit,—the purchase price ·being represented by Allen's promissory notes secured—except $15,000 thereof—by a vendor's lien on the land; and part of them—including said $15,000—being further secured by the guaranty of Rule and a pledge of certain life insurance policies issued to him. The $15,000 referred to as not secured by a vendor's lien was represented by notes in favor of appellee R. B. Pyron, who claimed same was paid to him by appellants on account of an indebtedness they owed to him as the result of. other transactions between them. Appellants, however, claimed the $15,000 was paid to Pyron as a commission for his services in connection with the sale made to Allen and Rule. Appellees' suit was to recover the $10,000 paid by them to appellants at the time the contract of October 27, 1906, was entered into, and the excess over $6.50 per acre in addition to said $10,000 received by appellants on account of the sale to Allen and Rule. They obtained a judgment against appellants for the sum of $25,000 and interest thereon from May 11, 1907."

The Court of Civil Appeals made a very clear statement of the facts of this case, and· pronounced a judgment which was sustained both by the findings of the jury and by the law, whereby they affirmed the judgment of the District Court. Subsequently, upon a motion for rehearing they set their former judgment aside, and entered judgment reversing and remanding the case to the District Court for another trial.

It will be necessary, in a brief way, to review the facts as they are presented in the first opinion of the Court of Civil Appeals. The contract, as it is stated in the opinion of the Court of Civil Appeals, between Bush and Tillar and the two O'Neals and Pyron, was to the effect that the $10,000 which was paid by Pyron and his partners on the purchase of the land should not be entered as a credit upon the purchase price, but should be appropriated as damages for the failure to

comply with the contract. This contract provided what should be the penalty of a failure to comply, and made the forfeiture of the $10,000, if it should occur, the compensation for a failure to make the payment in accordance with the contract.

We are of opinion that this had the effect to deprive Bush and Tillar of the right to rescind the contract for the sale of the land. They provided their remedy by the appropriation of the $10,000 as damages for the failure of Pyron and the O'Neals to perform the terms of the contract. They could not have damages for the failure to perform the terms of the contract, and at the same time destroy that contract.

If Bush & Tillar had the right to disaffirm the contract or set it aside on the failure to pay the $15,000 as agreed to, and if when the parties met and the matter was discussed among them they agreed upon a different procedure, whereby Bush & Tillar undertook for their debtors to carry out a transaction which the latter had made with other parties in Kansas City, then, we think, there can be no controversy that by accepting such agency and agreeing to act with the Kansas City parties as substitutes for Pyron and his partners, Bush & Tillar waived their right of forfeiture altogether.

Pyron and his associates, anticipating the failure to be able to meet the contract, had made an agreement with certain parties in Kansas City, whereby it was agreed that those parties should take the land that Pyron and the O'Neals had bought from Bush & Tillar, and be substituted in the place of Pyron and the O'Neals, assuming their indebtedness to Bush & Tillar and taking the benefits of the contract between Bush & Tillar and the O'Neals and Pyron.

This was explained to Bush & Tillar at their conference, and it was agreed by the parties that Bush & Tillar would accept the substitution of these parties for Pyron and his partners. By this agreement Bush & Tillar certainly became the agents of Pyron and the O'Neals for the accomplishment of this purpose. Bush & Tillar held the legal title to the land in themselves, and they had the power to convey that title at the request of the owner of the equitable title, and they undertook to do just what the law authorized them to do, that is, by agreement of the owner of the equitable title one who holds the legal title can convey it, and invest the legal and equitable title in his vendee.

It is a well settled rule to which there is no exception that one who undertakes to act as agent or trustee for another can not appropriate the benefits of such transaction to himself. On the other hand, he must give to the principal for whom he acts the benefits and advantages, and if he appropriates the same he is liable to the principal, who may recover the thing appropriated or damages sustained by the act.

We can see no room for argument or discussion of this case as to the wrongful act of Bush & Tillar in appropriating to themselves the interest of Pyron and the O'Neals, consummating in their own names the identical transaction which they assumed and undertook to complete in the name of and for the benefit of Pyron and the O'Neals. We know

of no authority in law or equity that will sustain any such action by an agent. Good faith on the part of the agent must be observed, and any violation of it will subject him to an action by the principal in order to adjust the rights between them. Such agent must answer to his principal fairly, truly and justly. Messer-Moore Ins. Co. v. Trotwood Park Land Co., 170 Ala., 473, 53 So., 228; Am. & Eng. Ann. Cases, vol. 25, p. 718.

"The relation of an agent to his principal is ordinarily that of a fiduciary, and as such it is his duty to act with entire good faith and loyalty for the furtherance and advancement of the interests of his principal in all dealings concerning or affecting the subject matter of his agency, and if he fails to do so he is responsible to his principal for any loss resulting therefrom, or the principal may repudiate the acts of the agent and recover back any money or property paid him, less the agent's proper charges and compensation; and an agent who has defrauded his principal can not set up the negligence of such principal as a defense to an action for an accounting." 31 Cyc., p. 1430.

The facts found by the Court of Civil Appeals show a gross fraud by Bush & Tillar in appropriating to their own benefit the transaction with Rule and Allen, when they had agreed to consummate it for the benefit of Pyron and the O'Neals. The Court of Civil Appeals affirmed the judgment of the District Court, which was in favor of the plaintiffs in error here, but upon motion for rehearing they set aside that judgment for a very peculiar reason.

The court seems to hold that Bush & Tillar, who held the legal title to the land, could not by the consent and at the direction of Pyron and the O'Neals pass the equitable title to the purchasers in Kansas City. They did not cite any authority for that proposition, and we have not been able to find any that tends to support that position. It is unquestionably true that, as a matter of law, the vendor of land with a reservation of lien for the purchase money holds the legal title, and on failure of the vendee to pay, the vendor may revoke the sale and resume the equitable as well as the legal title. The writer has not been able to find authority to support the proposition that one who holds the legal title can not, by consent of the holder of the equitable, pass the equitable by the conveyance of the legal title. The legal title is paramount to the equitable title under such circumstances.

There can be no reasonable doubt about the proposition that, with the consent of the cestui qui trust the vendor, in this case, the trustee, might convey the whole right, legal and equitable, to the agreed purchaser, and the Court of Civil Appeals erred in setting the judgment aside.

We have no forms of action in this State, but every suit is conducted by petition and answer. Articles 1826 and 1827, Vernon's Sayles' Civil Statutes; Carter v. Wallace, 2 Texas, 206.

When the allegations of the petition are sufficient the court will render such judgment as will meet the requirements of the allegations

in the petition, without regard to the form of action. If the party is entitled to damages and alleges facts which entitle him to damages, the court will give him damages. If a party alleges facts which entitle him to rescission, the court will give him rescission. If a party is entitled to an enforcement of a contract, the court will find in his favor to enforce it, without regard to the forms of action in the trial court, and will administer justice according to the allegations in the petition and briefs which are presented.

It is therefore ordered that the judgment of the Court of Civil Appeals upon rehearing by which it set aside its former judgment and rendered judgment in favor of the appellants in this case, be and the same is hereby set aside and held for naught. And it appearing that the first judgment of the Court of Civil Appeals was by that court set aside on a question of procedure, it is ordered that the judgment of the District Court be affirmed.

Opinion delivered February 24, 1915.

## ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE PHILLIPS delivered the following opinion on motion for rehearing:

We are not satisfied with the decision of this case as made on the original hearing. The motion of the defendants in error for a rehearing is granted and our original judgment set aside, the case being continued for determination at the next term.

It should be said that the inaccurate statement in his opinion as to the disposition made of the case by the Court of Civil Appeals was intended to be corrected by Judge Brown before it was filed, and this was not done only through oversight. While the statement was erroneous, it was not one of vital importance.

Opinion filed June 26, 1915.

## ON REHEARING.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

At a former term we reversed the judgment of the honorable Court of Civil Appeals in this case and affirmed that of the District Court, the opinion of the court being delivered by the late Chief Justice Brown. Some misstatements in respect to the disposition of the case by the Court of Civil Appeals appeared in the opinion which it was Chief Justice Brown's purpose to correct before the opinion was filed, but through oversight this was not done. For the purpose of making these corrections and re-examining some features of the case, as well, we granted the motion for rehearing of the defendants in error, setting our judgment aside and reserving further decision.

The case in all of its aspects has been thoroughly reconsidered. Save in one material respect it was in our view correctly decided upon the former hearing, and with that correction in the judgment our former determination will be adhered to.

A substantial statement of the case is contained in the former opinion. A judgment for $25,000 and interest in favor of the plaintiffs in the suit was rendered in the trial court. This judgment was reversed by the Court of Civil Appeals, upon a holding that the defendants were entitled to have the jury pass upon the issue as to the value of the notes, in excess of $6.50 per acre, given them by Rule and Allen for the land, and the cause remanded for further trial. On rehearing judgment for the defendants was rendered, apparently upon the ground that the plaintiffs' cause of action was one for damages for the defendants' breach of their contract to account to the plaintiff for the amount in excess of $6.50 per acre received in the sale to Rule and Allen, and not for the recovery of such excess, as was in fact the action.

There was evidence to sustain a finding,—and under the charge of the court it is to be assumed that such was the jury's finding,—that Tillar for himself and co-defendant, the owners of the land, agreed with the plaintiffs that in lieu of their making any further payment under their own contract and a closing of the pending transaction for their acquisition of the title, the land might be directly conveyed to Rule and Allen, with whom the plaintiffs, in contemplation of their own purchase, were negotiating for its sale; and that acting with the plaintiffs and in their behalf he would assist in concluding such sale, holding for the plaintiffs as their property, and accounting to them therefor, all in excess of $6.50 per acre that Rule and Allen might bind themselves to pay for the land. The sale to Rule and Allen, for $6.50 per acre and $15,000 in excess of that amount, evidenced by secured notes, was thus effected. It is clear that the sale was made through the means of the pending negotiation between the plaintiffs and Rule and Allen, of which Tillar fully availed himself. The result was a sale of his and his co-owner's land which was entirely satisfactory to himself. Tillar's attempted repudiation of his agreement with the plaintiffs after the sale to Rule and Allen was virtually concluded and his announcement of a purpose to appropriate the entire proceeds could not destroy the rights of the plaintiffs under the agreement. He undertook the transaction with Rule and Allen under the agreement, and in good conscience was bound to observe it upon concluding a sale which was the subject of it. The plaintiffs owned an equitable interest in the land. They had assisted in closing the transaction with Rule and Allen, and hence were in the attitude of consenting to the passing of their equitable interest by Bush & Tillar's deed. The conveyance by Bush & Tillar of the legal title, therefore, passed to Rule and Allen the plaintiffs' equitable interest by estoppel. In concluding the transaction with Rule and Allen under these circumstances, Tillar, upon clear equitable principles, was a trustee for the plaintiffs to the extent of the excess over $6.50 per acre that Rule and Allen contracted to pay for the land, and rested under the duty of accounting to the plaintiffs therefor.

The failure of the trial court to submit the issue as to the value of the notes accepted by Bush & Tillar, representing the excess over $6.50 per acre agreed to be paid by Rule and Allen in the transaction, affords no ground for reversing the judgment. Granting that there was evidence raising the issue, the error of the court consisted in its omission from the charge. No special charge upon the issue was requested. The amount of the notes was, prima facie, their value; and upon the measure of the recovery there was no affirmative error in the charge. A judgment will not be reversed because of a mere failure to submit an issue where no charge embodying the issue is requested. Shumard v. Johnson, 66 Texas, 73; Texas & P. Ry. Co. v. Eberheart, 91 Texas, 321.

This is also true of the issue in respect to the amount the plaintiffs were entitled to recover if the payment by Tillar of $15,000 in notes to Pyron, one of the plaintiffs, was for a commission earned in making the sale to Rule and Allen. Assuming that this payment to Pyron was for such purpose, and not, as Pyron claimed, for the purpose of satisfying other indebtedness due him by Bush & Tillar, and that accordingly there could be no recovery for his interest in the amount Rule and Allen agreed to pay for the land in excess of $6.50 per acre, no special charge presenting the issue was requested by the defendants; and, therefore, the judgment will not be reversed because of the court's failure to submit it.

In one respect we think the judgment of the trial court was materially wrong. This is the only additional question which we deem it necessary to discuss. The undisputed evidence was that the amount agreed by Rule and Allen to be paid for the land in excess of $6.50 per acre was $15,000. The jury found in favor of the plaintiffs in the amount of $25,000 with interest, and judgment was so rendered. This included the $15,000 agreed to be paid by Rule and Allen in excess of $6.50 per acre and the $10,000 which the plaintiffs had previously paid the defendants under their contract of purchase. The charge of the court authorizing a recovery in favor of the plaintiffs was as follows:

"You are instructed that if you believe from the evidence that after plaintiffs and defendants entered into the written contract offered in evidence, dated October 27, 1906, and before or on May 11, 1907, plaintiffs had secured an agreement from Rule and Allen, for the purchase by said Rule and Allen from the plaintiffs of all the rights and interest vested in the plaintiffs under and by virtue of the said written contract between plaintiffs and defendants, for the sum of $25,000 and $6.50 per acre; and that thereafter and on or about the 11th day of May, 1907, the defendant Ben J. Tillar, for himself and for the firm of Bush & Tillar, entered into an agreement with the plaintiffs, that they, the defendants, would, in lieu of any further payments which might then be due from plaintiffs under the contract of October 27, 1906, conclude and make for plaintiffs and themselves, the trade with said Rule and Allen, and make conveyances of or contracts for the

land described in said written contract of October 27, 1906, direct to said Rule and Allen and that defendants would preserve for the plaintiffs' benefit any advanced consideration or bonus which you believe from the evidence said Rule and Allen had agreed, at that time, to give plaintiffs over and above the $6.50 an acre and that the defendants Bush & Tillar, and Ben J. Tillar would accept for themselves the $6.50 per acre and give to the plaintiffs, or account to the plaintiffs for all amounts over and above such sum of $6.50 per acre, as they might be able to contract for with said Rule and Allen; and you further believe from the evidence that in consideration of such agreement the plaintiffs notified Rule and Allen that they should deal directly with said Ben J. Tillar with reference to said matters, and they did so deal with said Tillar with reference to said contracts for the sale of said lands; and you further believe from the evidence that the defendants did, in pursuance of said agreements and understanding, if any, contract for the conveyance of said lands (mentioned and described in said contract of October 27, 1906) to said Sidney P. Allen with the guarantee of said Rule, and the same was acceptable to said defendants, and they, the defendants, did receive, realize or secure satisfactory contracts for any amount of money in excess of $6.50 per acre for said lands, then it will be your duty to find for the plaintiffs the amount which you find from the evidence said defendants realized, or secured satisfactory contracts for the payment of, in excess of $6.50 per acre, with interest at the rate of 6 per cent per annum from the date of the consummation of such sale to said Rule and Allen by the defendants."

This charge does not submit as an issue any agreement upon the part of defendants to pay the plaintiffs all that might be realized by them in the sale of the land in excess of $6.50 per acre, including the $10,000 which the plaintiffs had previously paid on their original purchase agreement, and does not authorize a recovery for the latter amount. It deals with the status of the parties as it existed after that payment had been made, and submits, as the predicate for a recovery by the plaintiffs, whether Tillar agreed, *in lieu of any further payments by the plaintiffs under their contract,* that he and Bush would, for the plaintiffs and themselves, conclude the pending trade between the plaintiffs and Rule and Allen, and would preserve for the plaintiffs *any bonus agreed to be paid by Rule and Allen* for the land in excess of $6.50 per acre, and account to them for all amounts over $6.50 per acre *which they might be able to contract for with Rule and Allen.* In other words, the subject of the charge was whether Tillar agreed that he and Bush would give to the plaintiffs all amounts over $6.50 per acre which *Rule and Allen might agree to pay for the land;* whether any amount in excess of $6.50 per acre was agreed to be paid by Rule and Allen; and the rule of liability in that event. It made no reference to any other character of agreement. A finding that Tillar did so agree would entitle the plaintiffs to a verdict for the amount in excess of $6.50 per acre that Rule and Allen agreed to pay, but it would not warrant a

verdict for an amount not a part of that amount. The charge then authorized the jury, if they found that Tillar agreed that he and Bush would account to the plaintiffs for all amounts over $6.50 per. acre contracted to be paid for the land by Rule and Allen, and that the defendants did receive, realize or secure satisfactory contracts for such an amount, to find for the plaintiffs the amount "which the defendants realized, or procured satisfactory contracts for the payment of, in excess of $6.50 per acre, with interest." This plainly relates only to the amount in excess of $6.50 per acre realized in the transaction with Rule and Allen or for the payment of which they had obligated themselves. As previously stated, that amount was only $15,000. Under the charge, therefore, no recovery for a greater amount was authorized. In their printed argument filed in. this court the plaintiffs have offered to file a remittitur of $10,000 if we should conclude that under the charge no greater amount than $15,000 with interest was recoverable. It being an undisputed fact that the amount agreed to be paid by Rule and Allen for the land in excess of $6.50 per acre was $15,000, we may reform the judgment and affirm it for the correct amount. The judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is accordingly. reformed so as to allow a recovery by the plaintiffs in the amount of $15,000, with interest at the legal rate from May 11, 1907; and as thus reformed the judgment of the District Court is affirmed.

*Reformed and affirmed.*

Opinion delivered February 14, 1917.