SMITH et al. v. SMITH et al. (No. 6043.)

(Court of Civil Appeals of Texas. Austin.
May 7, 1919. Rehearing Denied
June 18, 1919.)

1. EXCEPTIONS, BILL OF ⊜⇒16—EVIDENCE—
NARRATIVE FORM.

Bill of exceptions not containing in narrative form, as required by the statutes and rules, evidence taken on issue of misconduct of jury in juryroom, is insufficient to present the question on appeal.

2. EXCEPTIONS, BILL OF ⊜⇒39(2)—TIME FOR
FILING—ALLOWANCE BY COURT.

Bill of exceptions filed after the time allowed by the court in order overruling motion for new trial cannot be considered on appeal.

3. CORPORATIONS ⊜⇒186—SALE OF PROPERTY
—STOCKHOLDER'S FRAUD — SECRET PROFITS
—AGENCY.

Where a large stockholder undertook to sell all the property of a corporation though another had been duly appointed agent for sale, and fraudulently succeeded in getting corporation to give option to one who was his paid dummy, and then had option assigned to him and sold the property at a large profit over the option, and with the president, also a large stockholder, who had become acquainted with the fraud, fraudulently secured ratification of the sale, they were liable to the suing stockholders as for secret profits of a trustee, regardless of fact whether stockholder was a duly appointed agent or not.

4. PRINCIPAL AND AGENT ⊜⇒69(2)—SECRET
PROFITS—DUTY TO ACCOUNT.

An agent cannot for his own benefit make and retain a secret profit when acting in behalf of his principal, but must account to his principal therefor.

5. CORPORATIONS ⊜⇒186 — STOCKHOLDER
DEALING WITH CORPORATION—FRAUD.

The doctrine that a stockholder may deal with the corporation the same as any stranger has the qualification that the transaction is free from fraud and not unfair to the corporation itself.

6. FRAUD ⊜⇒9 — FALSE REPRESENTATIONS
—LIABILITY.

One who induces another to act to his detriment by reason of his false and fraudulent statements is liable for the damages resulting therefrom.

7. APPEAL AND ERROR ⊜⇒1062(5) — HARMLESS ERROR—SUBMISSION OF SPECIAL ISSUES.

Submission to jury of an immaterial special issue would not be prejudicial error.

8. APPEAL AND ERROR ⊜⇒213—OBJECTIONS
IN LOWER COURT—SPECIAL ISSUES—NECESSITY OF REQUESTS.

That a special issue did not give jury standard by which they were to be guided in determining the matter of agency is not ground for complaint where no request was made to correct the omission.

9. APPEAL AND ERROR ⊜⇒1002—REVIEW—
CONFLICT IN EVIDENCE.

With matters of contradictions in the evidence the appellate court has no concern.

10. TRIAL ⊜⇒350(2), 352(5) — SPECIAL ISSUES—WEIGHT OF EVIDENCE—QUESTION OF
LAW.

In action to recover secret profits made by stockholder in selling property of corporation after getting corporation ·to give option to his paid dummy, and then taking assignment of option, special·issue as to whether option to dummy was executed on account of deceit *held* not objectionable as assuming that stockholder was guilty of deceit or as presenting a question of law.

11. APPEAL AND ERROR ⊜⇒213—OBJECTIONS
IN LOWER COURT—SPECIAL ISSUE—OBJECTION—REQUEST.

In action to recover secret profits made by stockholder in selling property of corporation after getting corporation to give option to his paid dummy, and then taking assignment of option, objection that special issue as to whether option was executed on account of deceit did not give jury any standard to guide them, is unavailing in absence of request therefor.

12. CORPORATIONS ⊜⇒190—SALE BY STOCKHOLDER—SECRET PROFITS—PERSONS LIABLE.

Where president and stockholder of corporation ·discovered that another stockholder had fraudulently secured an option for sale of all the property of the corporation to a dummy, and had sold the property after taking an assignment of the option at a large profit, and president entered into fraudulent scheme and secured ratification of the sale, judgment in action by stockholders to recover secret profits was properly awarded against president as well as other stockholder, though president received no part of the secret profits.

13. FRAUD ⊜⇒26—PARTIES LIABLE—SHARING IN BENEFITS.

In an action based on deceit, and where a wrong is consummated through fraud, it is not necessary ·to show that a party participating in the fraud was benefited or shared in the profits.

14. JUDGMENT ⊜⇒253(2) — CONFORMITY TO
PLEADING—PRAYER—ATTORNEY FEES.

In an action by stockholders of corporation against stockholder and president for recovery of secret profits made by them in sale of all the property of corporation, where judgment was based on what was due suing stockholders, no recovery of attorney fees could be had on judgment against defendants, the pleading not asking for them.

15. DAMAGES ⊜⇒71—ATTORNEY'S FEES.

Ordinarily attorney's fees are not recoverable in suits for actual damages or where not provided by contract.

Appeal from. District Court, McLennan County; H. M. Richey, Judge.

Suit by J. F. Smith and others against Nelson K. Smith and others. From the judgment rendered, petitioners appeal. Re-

versed as to allowance of attorney's fees and in other respects affirmed.

W. E. Spell, of Waco, A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for appellants.

J. D. Williamson, of Waco, for appellees.

BRADY, J. This suit was filed by appellees, who were stockholders in the City Electric Company, which had been dissolved. They owned about 51 per cent. of the stock in the corporation. It was alleged in the petition that before the dissolution, and about the 1st day of January, 1914, it was decided at a stockholders' meeting to sell all of the property of the corporation, and at such meeting one Malcolm Graham was authorized and appointed agent to find a purchaser and that Nelson K. Smith, a stockholder, suggested to the stockholders, and later to Malcolm Graham, that he would try to dispose of the property to the Texas Power & Light Company, and thereafter reported that he had done so, and that the latter company had refused to purchase; that Nelson K. Smith conceived a scheme to defraud the stockholders of the City Electric Company, and conceived the idea of having an option taken on the property for $40,000 by one E. L. Hardin, who did not intend to become a purchaser, and that N. K. Smith would sell the property for a price in excess of $40,000, and appropriate to his own use the excess; that on March 2, 1914, N. K. Smith caused a stockholders' meeting to be held, and represented that the Texas Power & Light Company was not and would not become a purchaser, and that he believed he could find a purchaser in E. L. Hardin, and by such representations procured the passage of a resolution authorizing the board of directors to give an option to Hardin and to execute a deed upon the confirmation of the sale; that at the directors' meeting, N. K. Smith, being a director, upon his motion an option was given to Hardin at the price of $40,000 for a period of 70 days; that N. K. Smith, being one of the stockholders, thereafter contracted with the Texas Power & Light Company to sell the property for $60,000 and consummated the sale through a deed to Hardin from the corporation, and through Hardin to Texas Power & Light Company; that these transactions were for the purpose of defrauding the other stockholders; that before the Texas Power & Light Company accepted the deed, and before it had paid the consideration, W. W. Thornton, president of said City Electric Company, discovered the duplicity of N. K. Smith, and entered into a conspiracy with him and Hardin to defraud the stockholders out of the property; that the Texas Power & Light Company required a stockholders' ratification agreement, and that Thornton and N. K. Smith, through fraud, obtained such agreement, especially through the representations that Hardin had exercised his option, and had contracted to sell to the Power & Light Company; that the property was sold for $60,000, but that the corporation only received $35,000, the excess having been appropriated by N. K. Smith, Thornton, and Hardin to their own use and benefit.

The defendants' answered by general and special exceptions, general denial, and special answer. The substance of the special answer was that during the negotiations, and after their conclusion, the facts were presented to the stockholders in the ratification agreement submitted to and signed by them, and that they thereby ratified the conveyance and were estopped to claim fraud.

The case was submitted to the jury upon special issues, and judgment was entered by the court, upon the findings of the jury, in favor of plaintiffs, from which judgment this appeal was taken by N. K. Smith and Thornton.

### Findings of Fact.

The special issues submitted to the jury and their answers were as follows:

"First question: Was the defendant N. K. Smith selected by the directors or stockholders of the City Electric Company at a meeting held between the dates of October 1 and 5, 1913, as one of the parties to find a purchaser for the properties of said company? Ans. Yes.

"Second question: Was the deed conveying the properties of the City Electric Company to Hardin executed through and on account of the misrepresentations or deceit of the defendant N. K. Smith? Ans. Yes.

"Third question: (a) Did the defendant Thornton receive any part of the excess between the amount received by the corporation for the sale of its properties and that paid for said properties by the Texas Power & Light Company? Ans. No."

At the request of the plaintiffs, the following special issues were submitted:

"Plaintiffs' special issue No. 2: Did Nelson K. Smith after October 5, 1913, act or assume to act for the benefit of the said City Electric Company of Belton in the sale of its properties? Answer 'Yes' or 'No.' Ans. Yes.

"Plaintiffs' special issue No. 3: Were the stockholders of the City Electric Company advised that Nelson K. Smith was acting for the benefit of said corporation in the sale of its properties after October 5, 1913? Answer 'Yes' or 'No.' Ans. Yes."

"Plaintiffs' special issue No. 5: Did Nelson K. Smith, at the time it was represented that E. L. Hardin desired to obtain an option on the properties of the City Electric Company, intend to deceive or misrepresent to the other stockholders that the said option was for the benefit of Nelson K. Smith? Answer 'Yes' or 'No.' Ans. Yes.

"Plaintiffs' special issue No. 6: Did Nelson K. Smith falsely represent to the stockholders of the corporation on March 2, 1914, that E. L. Hardin for his (Hardin's) own use was taking an option on its properties? Answer 'Yes' or 'No.' Ans. Yes."

"Plaintiffs' special issue No. 10: Did Nelson K. Smith and W. W. Thornton cause to be represented to the stockholders on or about May 1, 1914, in Belton, Texas, that Hardin had exercised his right under his option to buy the properties of the City Electric Company, and had sold such properties to the Texas Power & Light Company, and that he (Hardin) was getting the difference between the option price and the sale price of said properties. Answer 'Yes' or 'No.' Ans. Yes."

"Plaintiffs' special issue No. 12: Did the stockholders at the time they signed the confirmation of the sale of the properties to the Texas Power & Light Company believe that E. L. Hardin was getting the difference between the option price and the sale price of these properties? Answer 'Yes'· or 'No.' Ans. Yes."

At the request of defendants the following special charge was given as modified by the trial judge, defendants excepting to the modifications:

"Gentlemen of the Jury: You are instructed that in considering your answer to special issue No. 1 submitted to you by the court and the answer thereto that the fact that the defendant N. K. Smith owned a large number of shares in said corporation in no wise creates him an agent for said corporation, nor does he by virtue alone of being a shareholder occupy any relation of trust toward the same or toward the other shareholders of said corporation. An agency cannot be implied from the fact that he is a large shareholder in the said corporation. The defendants request this charge No. 5."

There is support in the evidence for each of these findings, and they are adopted by this court as conclusions of fact, together with these additional facts, which were proven by the practically undisputed evidence:

"First, that the directors and stockholders of the City Electric Company were desirous of disposing of its property.

"Second, that Nelson K. Smith and Malcolm Graham were selected as proper persons to find buyers for the property.

"Third, that N. K. Smith did consider that he was acting for the corporation in the sale of its properties, and was authorized so to do, because he took up the question of sale with Graham, and with the Texas Power & Light Company the sale of the properties to that corporation.

"Fourth, that on the 17th day of February, Mr. Strickland, the president of the Texas Power & Light Company, advised that they were not then interested in the purchase of the properties.

"Fifth, immediately thereafter, or within a few days, Smith began talking to Hardin about taking an option for his benefit, and told Hardin that he expected to sell the properties to the Texas Power & Light Company.

"Sixth, he, an agent of the corporation for the sale of its properties, a large stockholder therein, and one, of the moving spirits in its affairs, and looked to for guidance, produced E. L. Hardin at a corporate meeting which he caused to be called on March 2, 1914, and then and there represented that Hardin was a purchaser for the properties, and desired an option thereon at $40,000, and secured a motion to be passed giving Hardin such option.

"Seventh, the undisputed evidence further shows that Hardin was solely an agent for Smith, acting for an agreed compensation of $500.

"Eighth, the evidence further shows that Hardin, without any compensation, transferred his option to Smith, for whose benefit it was taken, on March 17th, and Smith entered into contract on March 31st in his own name for the sale of the properties of the City Electric Company to the Texas Power & Light Company at a profit of $26,553.31 over the Hardin option.

"Ninth, that before the transaction was closed Thornton, the president of the corporation, discovered what Smith was getting for the properties, and refused, at first, to permit the deal to be closed or the deed to be passed to the Texas Power & Light Company.

"Tenth, a paper ratifying the transaction was then prepared. This paper recited that the corporation had given Hardin an option that the corporation had deeded the properties to Hardin in compliance with the option, that Hardin had sold the properties to the Texas Power & Light Company, and the Texas Power & Light Company was paying Hardin the purchase price of the properties on the faith of the ratification of the deal. The signature of all the stockholders was obtained by the representation that Hardin's option was valid, that Hardin sold the properties, and that Hardin was getting the profit."

### Opinion.

The first assignment of error relates to alleged misconduct of the jury while in the jury room. Upon the hearing of the motion for new trial evidence was taken on this issue, six of the jurors testifying. The bill of exceptions presenting this evidence is not in narrative form, but consists of questions and answers, and covers nearly 50 pages in the transcript. This bill was filed in the trial court May 13, 1918. The certificate in the transcript shows that the court adjourned on February 9, 1918, and that the order of the court overruling the motion for new trial allowed 90 days after adjournment in which to file bills of exceptions and statement of facts.

[1, 2] It is apparent that this bill of exceptions, as well as all others in the record, were not filed until after the time allowed by the trial court. The matter does not appear of record except in such bill of exceptions.

As we have indicated, the facts relating to this question are in question and answer form, and not in narrative form, as contemplated by the statutes and rules. The manner of presenting this evidence imposes an unreasonable and unnecessary burden upon the appellate court, and seems to be in violation of the statute and rules. I. & G. N. R. R. v. Jones, 175 S. W. 491. For the reasons indicated, but more especially because the

bill of exceptions was filed too late, the first assignment will not be considered.

The second, third, fourth, and fifth assignments of error complain of alleged error in overruling certain special exceptions to the petition. We have considered each of these assignments, and, applying the exceptions to the petition as a whole, we are of the opinion that the court did not err in overruling all of the special exceptions. If there were any error in overruling any of the exceptions, we have concluded that it did not constitute reversible error. It is deemed unnecessary to discuss the reasons for this holding, and each of said assignments is overruled.

By the sixth assignment of error appellants present their main contention that the trial court should have directed a peremptory instruction in their favor. The proposition and argument thereunder resolve the point to the contention, that since N. K. Smith was not a director in the corporation, and it appearing from the proof that he made no sale of the property as agent, but that this was authorized by the board of directors in giving the option to Hardin, which was thereafter transferred to N. K. Smith and sold to the Texas Power & Light Company, the stockholders having been fully advised and having ratified the conveyances, appellees were not entitled to recover the excess over the amount of the Hardin option, and that the court erred in not instructing a verdict for appellants.

Under the findings of the jury and the evidence in the record, we do not think these contentions are tenable. It appears that no attack was made in the motion for new trial upon the special verdict as being unsupported by the evidence, or as being contrary to the evidence, and there is no assignment urging the insufficiency of the evidence to support the verdict. Under these circumstances, it seems to have been held in the following cases that a motion for peremptory instruction does not challenge the sufficiency of the evidence to support the verdict and judgment so as to require an appellate court to examine the facts in the record to determine the matter. Essex v. Mitchell, 183 S. W. 399; Robertson v. Kirby, 25 Tex. Civ. App. 472, 61 S. W. 967; Arkansas Fertilizer Co. v. City Nat. Bank, 137 S. W. 1179; Weinstein v. Acme Laundry, 166 S. W. 126.

Also, under article 1986, Revised Statutes, a special verdict is conclusive between the parties as to the facts found, where there is any evidence to support it. However, we do not rest our decision upon the question upon this proposition, as, under the pleadings and evidence, the court properly submitted the issues of fact to the jury.

[3] Appellants were not entitled to a peremptory instruction, because the findings and evidence showed that W. W. Thornton was president of the corporation, and that Nelson K. Smith was a large and influential stockholder; that he was the agent of the corporation in the sale of the properties, and made a profit personal to himself from the sale; that, if not strictly speaking the agent, Smith, under all the facts and circumstances, occupied a trust relation to the other stockholders; that he obtained an option on the property for $40,000 in the name of Hardin, through deceit and through concealment of his interest; that he secretly made the sale to the Texas Power & Light Company for his own advantage, and obtained a profit of approximately $25,000; that Smith and Thornton, by deceit and false representations, induced the stockholders to sign the document ratifying the sale of the property to Texas Power & Light Company.

In our view of the case, it is immaterial whether N. K. Smith was technically an agent of the corporation or the stockholders upon its dissolution. However, we think the evidence ample to sustain the findings of the jury that N. K. Smith did become the agent for the sale of the property. This is shown by the testimony of Malcolm Graham, Fairweather, Alfred Denny, M. V. Smith, and by the letters of N. K. Smith himself, introduced in evidence. This testimony showed that at a directors' meeting, about the 1st of October, 1913, N. K. Smith and Malcolm Graham were selected to find a purchaser for the property; and shortly thereafter N. K. Smith, in connection with Graham, actively undertook to sell the property to Texas Power & Light Company. The findings of the jury and evidence in the record are to the effect that he fraudulently represented to the stockholders that he had been unsuccessful in making a sale to the Power & Light Company, and fraudulently induced the execution of the option to Hardin, when he was in fact the real party at interest, and that the intervention of Hardin was but a step in his scheme to sell the property for the benefit of himself and to the detriment of the other stockholders.

It is true that N. K. Smith was not a director or officer of the corporation, but he was a large stockholder, and, together with Thornton, owned half the stock of the company. The findings and evidence support the conclusion that N. K. Smith was selected as agent for the sale of the property, and actively entered upon and assumed that relation; and, further, that by virtue of his position he occupied a trust relation to the remaining stockholders, which would not permit him to reap a personal advantage to the injury of the other owners of the property. The true facts were ascertained by Thornton, president of the company, before the transaction was closed with Texas Power & Light Company, and the evidence is sufficient to support the finding of the jury that Thornton and N. K. Smith, by concealment and fraud, induced the execution of the ratification agreement by the other stockholders.

[4-6] Appellees have submitted the following propositions of law, as independent propositions, governing the facts in this case, which are believed by us to be sound:

First. An agent cannot for his own benefit make and retain a secret profit when acting in behalf of his principal, but must account to his principal therefor. O'Neal v. Bush & Tillar, 108 Tex. 246, 173 S. W. 869–871, 177 S. W. 953, 191 S. W. 1133; Butler v. Edwards, 50 S. W. 1045; Moore v. Waco Bldg. Ass'n, 19 Tex. Civ. App. 68, 45 S. W. 975–977; Sandoval v. Randolph, 222 U. S. 161, 32 Sup. Ct. 48, 56 L. Ed. 142; Dawson v. Natl. Life Ins. Co., 176 Iowa, 362, 157 N. W. 929, L. R. A. 1916E, p. 878, Ann. Cas. 1918B, 230.

Second. The general doctrine that a stockholder may deal with a corporation the same as any stranger is to be understood with the qualification that the transaction is free from fraud and not unfair to the corporation itself. Thompson on Corporations (2d Ed.) § 4466; Jones v. Missouri Electric Co., 144 Fed. 765–771, 75 C. C. A. 631; Jackson v. Ludeling, 21 Wall. 616–622, 22 L. Ed. 492.

Third. One who induces another to act to his detriment by reason of his false and fraudulent statements is liable for the damages resulting therefrom. Jernigan v. Wainer, 12 Tex. 192; Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360, 28 L. Ed. 382.

Whether the case turns upon the law of agency or upon principles of equity, in either event there was liability under the facts proven and the findings of the jury. While, as contended by appellants, the case as pleaded may not have been technically an action for fraud and deceit, this is regarded as immaterial. Whether an action for deceit or to enforce a trust, the liability would be the same, and in either event Smith and Thornton would be accountable to the other stockholders for the fraud perpetrated, and must disgorge the unlawful profits.

Concluding that the trial court properly submitted the facts to the jury, and did not err in overruling appellants' request for a peremptory instruction, the sixth assignment is overruled.

[7] Appellants' seventh assignment of error complains of the trial court's action in overruling their objections to special issue No. 1, which is copied above. As we have already indicated, there were issues of fact which, in our opinion, justified the submission of this issue. It is claimed, however, that the submission of this question was improper, because it was immaterial under the evidence whether or not N. K. Smith was appointed an agent at such meeting. Assuming that this proposition is correct, we cannot see wherein appellants could complain, or where there would be reversible error in the mere giving of an immaterial issue in charge to the jury.

[8] It is further contended that this question did not give to the jury any standard by which they were to be guided in determining the matter of agency. This claim is inadmissible, if for no other reason, because it is not shown that appellants requested and submitted any special charge correcting the alleged omission.

[9] Furthermore, appellants insist that the evidence was contradictory as to the presence of a majority of the directors at such meeting, and even as to the holding of such meeting at all, and the appointing of an agent at such time. With the matter of contradictions in the evidence this court has no concern. If an issue of fact was raised, it was proper to submit it to the jury.

In argument it is suggested that the issue as submitted authorized a finding of agency on the mere action of the stockholders, when the board of directors is the only proper authority to act in such a matter. Waiving the reply that might be made that the subject-matter at this meeting was the disposition of the entire property of the corporation, which would seem to require the action of the stockholders, we can see no substantial merit in the contention. Granting that the answer of the jury must be construed as a finding that N. K. Smith was selected as agent either at a stockholders' or directors' meeting, but does not disclose which, no reversible error is shown. In our view of the matter, it is immaterial as to the alleged informality of the selection of N. K. Smith to act as agent. The jury found that he was selected either at a stockholders' or directors' meeting, and it is unimportant which it was. The jury further found, and the evidence supports the finding, that N. K. Smith undertook to act and assumed the relation of agent for the corporation or other stockholders, and actually consummated the sale of the property. The intervention of the dummy, E. L. Hardin, was of no legal effect, because, under the jury's findings, he was selected as an instrumentality of fraud, and his acts must be regarded as the acts of N. K. Smith, the real party at interest. Because of the facts heretofore recited and the reasons indicated we regard the seventh assignment of error as without merit, and it is overruled.

[10, 11] The eighth assignment is to the effect that the court erred in submitting special issue No. 2 because it is upon the weight of the evidence, in that it assumed that N. K. Smith was guilty of misrepresentation and deceit, and left the jury to determine only the question whether the deed to Hardin was executed on that account; because the jury were permitted to determine the question of misrepresentation without reference to any fiduciary relationship between Smith and City Electric Company; that it submitted a question of law rather than of fact, and gave the jury no standards to determine what would constitute misrepresentation or deceit; and be-

cause there was no evidence to sustain the same, the suit not being one for fraud or deceit.

We have considered all these objections, and regard them all as destitute of merit. From a highly critical and technical standpoint, the question might be open to the objection that it was upon the weight of the evidence; but, fairly regarded, we do not think it is so objectionable, and certainly the jury should not have been misled. As to the suggestion that no standards to guide the jury were embodied in the question, appellants did not prepare and submit any special charge to meet such objection. Under the pleadings, should it be conceded that the action was not one of fraud, it was proper to submit to the jury the question of fraudulent representations and deceit in obtaining the deed to the property. These allegations were proper either upon the theory of agency, or that Smith occupied a trust relation and should account for the profits appropriated to his own use. That this issue submitted a question of law rather than of fact was an objection not made before the charge was given, and cannot be considered. The assignment is overruled.

The ninth assignment of error complains of the submission of special requested charge No. 2, as follows:

"Did Nelson K. Smith, after October 5, 1913, act or assume to act for the benefit of said City Electric Company of Belton in the sale of its properties?"

The claim is that this issue was not supported either by the pleadings or evidence. In neither respect is there any merit. The petition, considered in its entirety, raised the question; the evidence abundantly raises an issue of fact on this point. Therefore we overrule the assignment.

The tenth assignment of error raises the point that the court should have sustained appellants' objection to special issue No. 10, requested by appellees, because there was no evidence that Smith or Thornton made any representations to the stockholders that Hardin had exercised his option, and had sold the property to the Texas Power & Light Company.

It is deemed unnecessary to set out the details of the evidence, but we have examined the record, and the testimony, in our judgment, was ample to justify the submission of such issue. This question relates to the facts and circumstances concerning the obtaining of the ratification agreement from the stockholders. There was evidence to support the theory that Smith and Thornton acted together in fraudulently misrepresenting and concealing the true facts, and in inducing the execution of the ratification agreement, which was demanded by Texas Power & Light Company before it would close the deal. This rendered it proper, if

not necessary to submit such issue, and the assignment is overruled.

[12, 13] The eleventh assignment presents the claim that the court erred in overruling the motion of W. W. Thornton for judgment upon the verdict, because the same is insufficient to authorize a judgment against him, and that there was not sufficient evidence upon which to base a judgment against him. It is true that the jury found that Thornton did not share in the profits made by Smith in the transaction, but such finding does not relieve Thornton from liability. In an action based upon deceit, and where a wrong is consummated through fraud, it is not necessary to show that a party participating in the fraud was benefited or shared in the profits. It is sufficient that through his fraudulent misrepresentations and acts a fraud has been committed, and the plaintiff injured. Jernigan v. Wainer, 12 Tex. 192; Hindman v. Bank, 112 Fed. 942, 50 C. C. A. 623, 57 L. R. A. 107.

[14, 15] The last question presented in the brief is the contention of appellants that the court erred in permitting appellees to recover attorney's fees against appellants. It is urged that the pleadings did not ask for attorney's fees, and that the taxing and rendering judgment for such attorney's fees against appellants was unwarranted by law. This contention is believed to be correct, and the assignment should be sustained.

The court allowed $5,000 as attorney's fees to plaintiffs, taxing one-half thereof against and providing that it should be paid out of the distributive share of appellees in the fund when collected. The remaining $2,500 was taxed against appellants' distributive share of the fund, but they had waived any interest in and distributive share of the judgment recovered as stockholders.

As we interpret the judgment, the amount recovered by appellees in the judgment, as finally corrected, was for a sum and for a fund for the benefit alone of appellees, and was, when collected, to be distributed between appellees to the exclusion of Thornton and N. K. Smith. As to such recovery Thornton and N. K. Smith were adverse to plaintiffs, and had no community of interest in the fund to be collected under the judgment. It is difficult to conceive upon what principle appellees would be entitled to recover their attorney's fees, or any part thereof, against appellants in such a case. We know of no authorities which would sustain such a recovery.

We have been cited by appellees to certain cases which sustain the rule that where a plaintiff recovers trust property or a fund for the benefit of others having a common interest a court of equity will allow reasonable attorney's fees to reimburse plaintiff out of the fund recovered. These decisions are not regarded as in point, since the recovery in this case was not for the benefit

of either N. K. Smith or Thornton, but was against them, and, upon collection of the judgment, they will have no interest in the fund. It is a well-established rule in this state that ordinarily attorney's fees are not recoverable in suits for actual damages or where not provided by contract. We think the facts of this case fall within the rule, and that it was error for the trial court to tax and render judgment against appellants for appellees' attorney's fees.

Our conclusions render it necessary to reform the judgment of the court below. Accordingly the judgment, in so far as it allows attorney's fees against appellants, will be set aside, and in all other respects affirmed.

Reformed and affirmed.

