**DITTMAR et al. v. ALAMO NAT. CO. et al.**

No. 3340.

Court of Civil Appeals of Texas. El Paso.

Feb. 13, 1936.

Rehearing Denied Feb. 27, 1936.

C. A. Leddy and Fulbright, Crooker & Freeman, all of Houston, for plaintiffs in error.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, for defendants in error.

HIGGINS, Justice.

This is a suit by Emmy, John, and Charles Dittmar and the Emmy Dittmar Improvement Company, a corporation, against G. A. C. Halff, Frank Wolfe, W. M. Ratcliffe and others not necessary to mention. The Dittmar Properties Company, a corporation, intervened in the suit. The Dittmar Properties Company was incorporated by Emmy, John, and Charles Dittmar with 2,500 shares of nopar value stock. By deed dated July 1, 1930, various parcels of land, incumbered by liens, were conveyed by Emmy Dittmar to the Properties Company in consideration of $10 and 8 per cent. bonds of the company in the principal sum of $408,000 payable to bearer. The payment of these bonds was secured by deed of trust of the same date, upon the lands so conveyed to the Properties Company. The Dittmars assigned these bonds and the 2,500 shares of stock in the Properties Company to the defendants Halff, Wolfe, and Ratcliffe, who paid therefor the face value of the bonds. The defendants gave the Dittmars an option to repurchase the bonds and stock, the option terminating June 1, 1935. The option to repurchase was at an advanced price above that paid by the defendants. The repurchase price varied according to the date the option was exercised. The theory of the plaintiffs was that the transaction was not a purchase of the bonds and stock by the defendants, but was in fact a loan of $408,000 to the Dittmars, evidenced by the bonds; that the transaction was a device to conceal the usurious nature of the loan. If it was in fact a loan, the same was usurious for the advanced repurchase price would have exceeded interest at the rate of 10 per cent. per annum. The theory of Halff, Wolfe, and Ratcliffe was that the transaction was not a loan, but constituted a purchase outright by them of the bonds and stock, with an option granted the Dittmars to repurchase the same at the advanced price stated in the option contract.

The petition is lengthy. Its main purpose seems to be to establish the transaction was a usurious loan and Halff, Wolfe, and Ratcliffe were holding the 2,500 shares of stock in trust for plaintiffs rather than as outright owners thereof. The prayer was for a temporary injunction, receivership of the properties, accounting of receipts and disbursements, "judgment establishing the trust relationship under which defendants Halff, Wolfe and Ratcliffe are holding the 2500 shares of stock in Dittmar Properties Company," and general relief. There are special prayers for relief, but they are of no present materiality.

Halff, Wolfe, and Ratcliffe answered at length. Suffice it to say they denied the transaction constituted a loan and was a device to circumvent the usury laws, or that they were holding the stock in trust. They set up a cross-action which reads: "Further answering and by way of cross-action and complaining of plaintiffs herein, these defendants aver that the claim set up in plaintiffs' petition herein constitutes a cloud

upon their title to said stock of the Dittmar Properties Company and that these defendants are entitled to have such cloud upon their title of the stock removed, and the title decreed in them free and clear of all claims of any kind or character as asserted by plaintiffs in said petition."

As to the cross-action, they prayed "judgment quieting their title to said 2500 shares of stock of said Dittmar Properties Co.," and for general relief.

The Dittmar Properties Company intervened, setting up:

"That the plaintiffs in this case, Emmy Dittmar, Charles Dittmar and John A. Dittmar, on the 28th day of June 1930, as incorporators, executed the charter of the intervener, a corporation under the laws of the State of Texas, the said named plaintiffs being the incorporators and directors named in the charter of said corporation so filed with the Secretary of State of the State of Texas on the 30th day of June, 1930.

"That on or about the first day of July, 1930, the said above named plaintiff Emmy Dittmar conveyed to this corporation by good and sufficient deeds, duly recorded in the Deed Records of Bexar County, Texas, the properties described in plaintiffs' petition in this cause, for the consideration of the capital stock of intervener, consisting of 2,500 shares, no par value, and its first mortgage bonds in the sum of $408,000, payment of which said bonds is secured by deed of trust as of date July 1, 1930, executed by this corporation to the Alamo National Bank, Trustee, to secure the payment of said bonds, and said stocks and bonds were delivered by intervener to said named plaintiffs in payment for said property. * * *

"That the allegations in plaintiffs' petition in this cause that the properties described in plaintiffs' petition were in fact conveyed to defendants Halff, Wolfe and Ratcliffe, instead of intervener, and the title held by said parties in some kind of a trust relationship for the benefit of said plaintiffs, are specifically denied by this intervener. That their prayer in said petition as to said alleged trust relationship with reference to said properties and the title thereto constitutes a cloud on the title of this intervener.

"That in truth and in fact the fee simple title to said properties is in this intervener, subject only to the liens described in the deed of conveyance of said properties from plaintiff Emmy Dittmar to this intervener and the deed of trust hereinabove referred to, and by reason of the conveyance of said title to this intervener by plaintiff Emmy Dittmar herein and their acts in organizing intervener corporation, and as the officers thereof in executing the said bonds and the deed of trust as aforesaid to secure the payment of said first mortgage bond issue, and said plaintiffs, having sold the stock and bonds of this intervener to third parties, are now estopped to deny that the title to the real estate which is the basis of the said stock and bond issue is vested in this intervener, and to assert that the title to said property is in fact in other parties subject to some alleged trust relationship.

"In reference to sub-paragraph (b) of paragraph 19 of plaintiffs' petition this intervener says that it is under no duty or obligation to plaintiffs to furnish an account of any of the receipts and disbursements made in connection with the property described in plaintiffs' petition, but nevertheless, for the information of this court, should such information be desired, this intervener is at this time filing with the papers in this cause a full, complete, itemized statement of such receipts and disbursements.

"Premises considered, intervener prays that on hearing hereof it have judgment removing the cloud on its title to said properties described in plaintiffs' petition, other than said 609 acres, and judgment decreeing the fee simple title in said properties to be in this intervener, subject only to the liens described in the deed of conveyance of said properties, other than the 609 acres, and the deed of trust lien to secure the payment of the first mortgage bonds issued by intervener and delivered to said plaintiffs, for costs and for such other relief, general and special, as this intervener may be entitled to in law or equity."

To the cross-action of Halff, Wolfe, and Ratcliffe, and the plea in intervention, the plaintiffs filed no answer.

The case came on for final hearing when plaintiffs dismissed their suit and over their protest judgment was rendered upon the cross-action and intervention substantially as follows:

The court found that the defendants. Halff, Wolfe, and Ratcliffe acquired title to the 2,500 shares of the capital stock of the Dittmar Properties Company and $408,000

of the 8 per cent. bonds of said Company, $25,000 having been paid on said bonds, and the decree vested title to said 2,500 shares of stock in said defendants, free and clear of all claims by plaintiffs. Said judgment recited that each of the defendants be quieted in their title to their respective portions of said stock.

It was further adjudicated that the remainder of the 8 per cent. bonds in the sum of $383,000 be adjudged valid, subsisting, and legal obligations of said Dittmar Properties Company, and that none of the plaintiffs had any right, title, or interest therein.

The court further found that the intervener, Dittmar Properties Company, acquired the property described in plaintiffs' petition for a valuable consideration and was then the legal owner thereof.

It was further decreed that title to all the notes, revenue, cash, and other personal property be vested in the intervener, Dittmar Properties Company, free of all claims by the plaintiffs, and that the cloud on the intervener's title to such property asserted in this suit be in all things removed and that said company be forever quieted in its title to said property.

The plaintiffs in the suit prosecute this writ of error.

### Opinion.

While the plaintiffs in error did not demur to the cross-action of Halff, Wolfe, and Ratcliffe or to the plea in intervention, they here assert such pleadings state no cause of action, wherefore the court erred in not granting their request for a dismissal of the entire case as between them and said defendants and intervener.

██ The record discloses plaintiffs in error were represented by counsel upon the final hearing who participated in the trial to the extent of objecting to evidence offered by defendants in error and the cross-examination of witnesses. In effect, the plaintiffs in error in this court are for the first time asserting the pleadings in question are subject to general demurrer, and the judgment for that reason should be reversed.

"After verdict there is greater reason than in ruling on a general demurrer for construing the pleading as favorably to the pleader as possible." 33 Tex.Jur., Pleading, § 182.

Judge Moursund reviewed the authorities at some length in City of San Antonio v. Bodeman (Tex.Civ.App.) 163 S.W. 1043, 1045 (writ refused), calling attention to the confusion in the authorities as to the effect of a failure to demur to a petition as affecting the right after verdict to question the sufficiency of the pleading to state a cause of action. Judge Moursund said: "It is plainly deducible from the cases decided by our Supreme Court that said court has always been of the opinion that when the sufficiency of the petition is questioned for the first time after verdict more liberal rules should be applied in passing on the same than are laid down for testing the pleading when the demurrer is interposed and urged at the proper time. * * * Our courts have adhered to the view that where there is a total omission to state a cause of action, or some fact essential to the cause of action has been wholly omitted, a verdict will not cure the defect. Ramsay v. McCanley, 2 Tex. 189; Ellis v. Howard Smith Co., 35 Tex.Civ. App. 566, 80 S.W. 633. The modern tendency is toward greater liberality in the construction of pleadings in order not to require the retrial of a case when justice has been done, and the parties understood what the points in issue were, and the same were submitted to a court or jury."

Plaintiffs in error say the cross-action and intervention state no cause of action because under the laws of Texas there is no such action as one to quiet title or remove cloud from title to personal property. In other words, an owner of personalty who is in possession is without a remedy against adverse claimants to the property. Counsel have not cited any case in this state so holding, but cases from other jurisdictions are cited holding that in the absence of a statute authorizing the same, a bill in equity will not lie to quiet title to personalty, the reason ordinarily given being that the remedy at law is adequate. See Heilman v. Heilman, 28 S.D. 303, 133 N.W. 256, Ann.Cas.1914B, 343, and subjoined note.

Mr. Pomeroy says: "It has been held that a cloud upon the title to personal property, even by matter appearing of record, cannot be removed; but there seems no good reason for thus restricting the jurisdiction, and the instances are not infrequent where it has been exercised, in cases of void recorded chattel mortgages, spuri-

ous issues of shares of stock, etc." 2 Pomeroy's Equitable Remedies, 1228, § 729.

■ We concur in the view of Mr. Pomeroy that there seems to be no good reason for so restricting the remedy of an action to quiet title. This is especially true in Texas, where the distinctions between law and equity do not obtain. In this state "a plaintiff may recover when he shows himself entitled to relief, either at law or in equity." Croft v. Peck, 64 Tex. 627. Even in those states where the distinction between law and equity is observed, equity in some cases has entertained jurisdiction to quiet title to personalty where there was no adequate remedy at law. See note above mentioned in Ann.Cas.1914B, 344.

There is a distinction between a bill to quiet title and a bill to remove cloud from title. 2 Pomeroy's Equitable Remedies, 1223, § 725. They are both equitable remedies.

■ We see no reason why in this state the owner of personalty, in possession, should not be permitted to maintain a suit to his quiet title as against an adverse claimant.

■ In the present case, the plaintiffs in error, by court action, have asserted an adverse claim against the stock claimed and held by Halff, Wolfe, and Ratcliffe. We are of the opinion defendants in error had the right, by cross-action, to have the issue so raised finally determined, and that such right could not be defeated by the action of plaintiffs in error in dismissing their suit.

Halff, Wolfe, and Ratcliffe having a remedy, the question narrows to the sufficiency of their cross-action to support the judgment rendered in their favor.

■ Though the plaintiffs in error dismissed their suit, the allegations of their petition may be looked to in aid of the cross-action seeking affirmative relief. McElyea v. Parker (Tex.Com.App.) 81 S.W. (2d) 649; Jones v. Wagner (Tex.Civ.App.) 141 S.W. 280; Northern Texas Traction Co. v. City of Polytechnic (Tex.Com.App.) 236 S.W. 73.

■ The petition shows an adverse claim to the stock and the cross-action was sufficient to invoke the jurisdiction of the court to determine the issue of title to the stock. This is true whether the cross-action be technically regarded as one to remove cloud from title or to quiet title. This observation is made in view of the language of the cross-action referring to the plaintiffs' claim as a cloud upon the title and the right to have same removed.

■ The cross-plaintiffs had the right to have their title quieted as against the adverse claim, and it is immaterial that they incorrectly named the character of relief to which they were entitled. In this connection see O'Neal v. Bush & Tillar, 108 Tex. 246, 173 S.W. 869, 871, 177 S.W. 953, 191 S.W. 1133, where Judge Brown remarked:

"We have no forms of action in this state, but every suit is conducted by petition and answer. Articles 1826 and 1827, Vernon's Sayles' Civil Statutes; Carter v. Wallace, 2 Tex. 206.

"When the allegations of the petition are sufficient, the court will render such judgment as will meet the requirements of the allegations in the petition, without regard to the form of action. If the party is entitled to damages and alleges facts which entitle him to damages, the court will give him damages. If a party alleges facts which entitle him to rescission, the court will give him rescission. If a party is entitled to an enforcement of a contract, the court will find in his favor to enforce it, without regard to the forms of action in the trial court, and will administer justice according to the allegations in the petition and briefs which are presented."

The judgment upon the cross-action was that Halff, Wolfe, and Ratcliffe "be and they are hereby quieted in their title to said 2500 shares," etc. This was the correct form in which the judgment should have been rendered.

In support of the view that the adverse claim of the plaintiffs in error is of such nature as to warrant the court in granting relief to the defendants in error, see Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865, 869. In that case, Judge Stayton said:

"It is also urged that if the patents are void there is no necessity for relief; and that, as a court will not do a useless thing, therefore it will not cancel the patents. As said by a distinguished author, this rule 'leads to the strange scene, almost daily, in the courts, of defendants urging that the instruments under which they claim are void, and therefore that they ought to be permitted to stand unmolested; and of judges deciding that the court cannot interfere because the deed of other instru-

ment is void; while, from a business point of view, every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value; and the judge himself, who repeats the rule, would neither buy the property while thus affected, nor loan a dollar upon its security. This doctrine is, in truth, based upon mere verbal logic, rather than upon considerations of justice or expediency.' 3 Pom.Eq., 1399.

"The rule insisted upon proceeds not upon the theory that the court has not power to remove cloud from title by the cancellation of an instrument which evidences the adverse claim, even though it be void; but upon the theory that the court refuses to exercise the power it has, when it clearly appears that its exercise can accomplish no useful purpose; and that by its refusal to act the person who calls upon it to exercise its power will suffer no injury by its refusal to do so. If such a rule as is insisted upon can have just application in any case, it would seem to be only in a case in which, from the face of the paper which is the basis of the claim asserted to be a cloud upon title, no man of ordinary intelligence would, in acting in relation to the subject-matter of controversy, be influenced by the claim asserted to be void, for it is only in such case that injury would not result from even a void claim.

"The rule, thus limited, would, however, be too uncertain to furnish the basis for judicial action in granting or refusing relief; and we are of the opinion that the better rule is that, notwithstanding an instrument may be void upon its face, a court has power, which it must exercise, not only to declare the instrument void, but to cancel it, when a defendant asserts claim under it.

"A defendant who asserts claim, even under an instrument void on its face, cannot be heard to say that it has not such semblance of validity as to create a cloud upon the title to property which it professes to convey, that will prejudice the right of the real owner if it be not removed. He cannot be heard to say that others will not attach to it the same degree of faith and credit, as a title-bearing instrument, which he in good faith gives to it; and that, to the extent of the doubt or cloud thus cast upon the real title, its holder is injured, or is likely to be injured."

See, also, Morton v. Morris, 27 Tex.Civ. 262, 66 S.W. 94, and Smith v. Taylor, 34 Tex. 589.

As to the sufficiency of the plea in intervention, we are of the opinion that, aided by the allegations of the petition of the plaintiffs in error, it too states a cause of action and supports the judgment quieting the title of intervener. The sufficiency of the plea is not to be tested solely as plaintiffs in error would have it tested by that sentence which reads: "That their prayer in said petition as to said alleged trust relationship with reference to said properties and the title thereto constitutes a cloud on the title of this intervener."

It is further insisted the evidence is insufficient to support the judgment in that no evidence was offered to show the claim of plaintiffs in error was unfounded or invalid.

The adverse claim of plaintiffs in error was on file and a part of the pleadings and record in the case. It was not necessary to formally offer it as evidence of the adverse claim.

It was shown by the witness Beaury, secretary of the Dittmar Properties Company, the stock had been issued to Halff, Wolfe, and Ratcliffe. A general warranty deed from Emmy Dittmar to Dittmar's Properties Company was introduced conveying the land in question in fee simple. This evidence showed prima facie unconditional title vested in defendants in error. It was then incumbent upon plaintiffs in error to go forward with the evidence and rebut the prima facie case thus made. This they did not do.

The record shows no reversible error. The judgment is therefore affirmed.