EMMY DITTMAR ET AL V. ALAMO NATIONAL COMPANY ET AL.

No. 7080. Decided June 22, 1938.
Rehearing overruled October 26, 1938.
(118 S. W., 2d Series, 298.)

*Fulbright, Crooker & Freeman, John H. Crooker* and *C. A. Leddy,* all of Houston, for plaintiff in error.

Since the laws of this State do not provide for an action to quiet or remove cloud from title to personal property, it was error on the part of the trial court in rendering judgment for the defendants on their cross action. It was also error to hold that the allegations in defendants answer and cross action were sufficient to entitle them to affirmative relief as against plaintiffs, and the trial court should have granted plaintiff's petition for dismissal of the entire case. Taylor v. Ward, 102 S. W. 465; McDonald v. Tinnon, 20 Texas 245; Brass v. Texarkana & Ft. Smith Ry. Co., 218 S. W. 1040.

*Boyle, Wheeler, Gresham & Terrell,* of San Antonio, for defendants in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit is by Emmy, Charles and John Dittmar, and the Emmy Dittmar Improvement Company against G. A. C. Halff, Frank Wolff, W. M. Ratcliffe, the Alamo National Company and other defendants not necessary to mention. The Dittmar Properties Company intervened. The suit was filed November 30, 1931, at which time a temporary restraining order was issued restraining a trustee's sale of one of the items of property involved herein. On March 4, 1932, an agreed interlocutory order was entered showing that the trustee's sale was later consummated. When the case came on for trial on final hearing on September 6, 1934, plaintiffs took a non-suit. The trial nevertheless went forward and was before the court without a jury upon the affirmative allegations and cross action filed by defendants, Halff, Wolff and Ratcliffe, and the petition of intervention of the company. All parties including plaintiffs appeared either in person or by attorneys and participated in the trial. Judgment was in favor of defendants and intervenor on their respective cross actions. The Court of Civil Appeals affirmed the judgment. 91 S. W. (2d) 781. The further statement of the nature and result of the suit is supplemental to that contained in the opinion.

Mrs. Emmy Dittmar, a resident of San Antonio, was the owner of nine items of property alleged by her to be of the value of $4,000,000.00, incumbered with liens ranging in amounts on the respective items from $145,000.00 to $2,-500.00. The Dittmars, the principal plaintiffs, hereafter called plaintiffs, alleged that the negotiations between them and Wolff, Halff and Ratcliffe, the principal defendants, hereafter called defendants, resulted in the organization by her of a corporation, Dittmar Properties Company, with 2500 shares of non-par-value stock, and a transfer by her of the properties to the company in consideration of the issuance and delivery to her of the company's stock and its bonds in the sum of $408,000.00 payable in five years and secured by a deed of trust on the properties. They alleged that as a result of the transactions she and the other organizers of the company, Charles and John A. Dittmar, transferred to Wolff, Halff and Ratcliffe the said stock and bonds for the purpose of procuring from them for herself a loan of $408,000.00, and not as an outright sale.

Plaintiffs in their verified petition attack the title of defendants to the 2500 shares of stock, alleging that while the stock and bonds were transferred to defendants and the transfer was a part of an artifice to cover up a usurious loan, and allege that defendants are holding the stock in trust for plaintiffs. They further alleged that they were entitled to a bill of discovery showing whether defendants had repudiated plaintiffs' beneficial ownership of the stock and whether a full account of the receipts and disbursements of the income and revenues from the properties had been made.

Defendants filed their verified answer and cross action in which they alleged that while the Dittmars at one time applied to them for a loan on the properties, they refused to make it. They allege that sometime thereafter plaintiffs through their attorney, B. A. Greathouse, offered to sell them the stock and bonds of a company to be incorporated to which plaintiffs were to convey the items of property above referred to, and asked defendants to make an offer to purchase the bonds and stock of the corporation; that on May 27, 1930, defendants made an offer in writing to purchase the bonds for $408,000.00, subject to approval by their attorneys, Boyle, Wheeler, Gresham & Terrell, of the form of the deed of trust and bonds proposed to be issued, and the titles to the respective properties to be conveyed to the company; that it was made a part of the offer of purchase to provide for a series of options to Mrs. Dittmar to repurchase the stock and bonds upon terms and conditions not now necessary to state. Defendants allege that their pro-

posal was accepted in writing by plaintiffs and returned to defendants; that their offer was what it purported to be, that is, to purchase outright the stock and bonds, and was not an artifice to circumvent the usury laws; that the details of the purchase were carried out in accordance with the terms of the written contract; that on July 18, 1930, they paid the cash consideration of $408,000.00 to the various parties designated by plaintiffs in accordance with the terms of the contract of purchase, and that on said date, at the written request of the Dittmars, executed to Emmy Dittmar the option agreement above referred to. Defendants further alleged by way of cross action that the claims set up in plaintiffs' petition constitute a cloud upon their title to the stock of the company and that they were entitled to have same decreed to them free and clear of such claims and to have the cloud on their title to the stock removed; and prayed accordingly that plaintiffs take nothing by their suit and that upon final hearing defendants have judgment quieting title to the capital stock.

Intervenor specifically denied that the properties described in plaintiffs' petition were in fact conveyed to defendants as plaintiffs alleged, and that such allegations cast a cloud upon intervenor's title thereto; and alleged that in truth and in fact the fee simple title to said properties was in intervenor subject only to the liens described in the deed from Emmy Dittmar to itself; and prayed that upon final hearing it have judgment decreeing the fee simple title in the properties to be in intervenor subject only to the incumbrances outstanding when the properties were conveyed to it, and for judgment removing cloud from title.

The pleadings of defendants and intervenor, it will be noted, were not defensive merely, but were such as to constitute a proper basis for affirmative relief as prayed for in their respective pleadings.

Answers were filed by other parties but it is not necessary that they be noticed.

On March 4, 1932, an interlocutory judgment was entered upon the pleadings summerized above, agreed to by all parties. It recites among other things that lien was created on the 609-acre tract (item 1 of the properties) by a deed of trust dated October 1, 1929, executed to Wm. P. Fitch as trustee, and that on January 5, 1932, the trustee under the authority of the court made a valid sale of said tract of land to Alamo National Company, trustee, in satisfaction of an unpaid balance of $80,000.00 of the principal indebtedness and interest out-

standing against the tract. It decreed that plaintiffs take nothing against the defendants and that all relief prayed for by plaintiffs affecting the said tract be denied. The sale of the property under the deed of trust was approved as valid and as vesting title to the tract in the trustee. It further decreed that the title so acquired by the trustee be quieted and confirmed as against plaintiffs and defendants as well as against the Alamo National Bank, B. A. Greathouse, and the intervenor herein, and decreed the issuance of a writ of possession placing the purchaser in possession. The concluding paragraph of the interlocutory decree sets out an agreement of the parties that it be entered as an interlocutory judgment finally adjudicating the right and title to the 609-acre tract and that upon a final disposition of the cause it be included in the final judgment. The decree was O.K.'d by Douglas & Black, the then attorneys for plaintiffs, by Boyle, Wheeler, Gresham & Terrell, attorneys for defendants, by B. A. Greathouse, by James A. Harley, attorney for Dittmar Properties Company, by Templeton, Brooks, Napier & Brown, attorneys for Alamo National Company and was incorporated in the final decree.

The case came on for trial about two and a half years after entry of the interlocutory decree. The final judgment recites the dismissal of plaintiffs' cause except as same had been adjudicated by the interlocutory decree; also that plaintiffs announced in open court that they did not desire to further prosecute the cause, and that defendants and intervenor insisted upon their right to have their several cross actions seeking affirmative relief against plaintiffs and Emmy Dittmar Improvement Company, tried. The court proceeded to final hearing with all parties named herein, including plaintiffs, participating in the trial.

The attorney for intervenor introduced in evidence the deed from Emmy Dittmar to intervenor, stating in offering same that "plaintiffs' petition alleges that there was some type of fraudulent transfer or trust agreement," and that the company desired to introduce "this deed by Emmy Dittmar to show that the properties company now owns this property in fee simple," stating also that the prayer of the company "is to quiet title to this property." The deed recites among other things that Emmy Dittmar, a feme sole, for and in consideration of the sum of ten dollars and other good and valuable considerations paid her by the company, and the further consideration of the execution and the delivery to her by the company "of those certain bonds * * *, aggregating the principal

sum of four hundred and eight thousand dollars ($408,000.00),"
and secured by deed of trust dated July 1, 1930, executed by
the company to the Alamo National Bank, trustee, on the
properties above referred to, "granted, sold and conveyed"
to the company, the lands, property, and notes therein describ-
ed. The deed is lengthy, but contains no statement indicating
that the conveyances recited are other than what the language
imports, that is, outright conveyance by Emmy Dittmar to
the company. The deed of trust executed on July 1, 1930, by
the company to Alamo National Bank, trustee, which is also
in evidence, recites the purchase of the property by the com-
pany from Emmy Dittmar, and recites also the issuance of
bonds and the giving of a lien thereon to secure their payment.
Plaintiffs' petition alleged the conveyance of the bonds to de-
fendants. The deed of trust recites the conveyances of the
properties to intervenor. The stock book of the company showed
the original issuance of 2500 shares of capital stock, 2498
shares to Mrs. Emmy Dittmar, one share to Charles Dittmar
and one share to John Dittmar; and the transfer by them of
the entire issue to defendants, 1329 shares to defendant Halff,
610 shares to defendant Wolff, and 561 shares to defendant
Ratcliffe. The transfer shown by the stock book appears to
have been an outright conveyance of the stock by plaintiffs to
defendants whereby title was divested out of plaintiffs and
vested in defendants. Judgment was in favor of defendants
and intervenor as prayed. The finding is therein set out that
defendants acquired title to the capital stock of the company
and the bonds free from all claims of plaintiffs; also that
intervenor acquired for a valuable consideration the property
described in plaintiffs' petition and was the legal owner there-
of. It was adjudged that the bonds, other than the $25,000.00
that had been paid, were valid obligations of the company and
that plaintiffs had no right, title or interest therein. It is further
decreed that defendants and intervenor be quieted in their
titles respectively.

The defensive matters pleaded by defendants, together
with their affirmative allegations, aided by the allegations of
plaintiffs' petition, were sufficient to entitle defendants to
the relief prayed for on their cross action. The authorities
cited by the Court of Civil Appeals warrants this conclusion.
It appears from the pleadings as summarized above that the
basic issue between plaintiffs and defendants was whether
the conveyances in question were outright, or were intended by
the parties as an artifice to circumvent the usury laws. Clearly
the claim of artifice by plaintiffs and their more general claim

that defendants were holding the stock under the transfer from Mrs. Dittmar in some sort of trust relationship, cast a cloud upon defendants' title to the stock to such an extent as to impair its value. The petition embodying plaintiffs' claims formally was dismissed when plaintiffs took their non-suit, but the order of dismissal did not stipulate that it was with prejudice. Had it so stipulated the cloud would thereby have been removed. The case when tried upon final hearing had been pending for four years. The basic issue stated above still remained for determination. It was not in terms nor in effect withdrawn by the order of dismissal. Plaintiffs' action in taking a non-suit did not have the legal effect of quieting defendants and intervenor in their respective titles, since plaintiffs were in no wise precluded from subsequently filing a similar petition. The only adequate relief open to defendants lay in a trial of the case. Had they chosen to sell the stock in their possession the sale would have been made at an impaired value. Obviously a judgment denying the prayer to quiet title would not have afforded an adequate remedy against plaintiffs' claims. Plaintiffs offered no facts upon the trial to disprove the outright conveyance of the stock to defendants shown by the evidence, or to disprove that the title of intervenor to the properties conveyed to it in fee simple and held by it under such conveyance, was other than a fee simple title. *It follows as a necessary deduction that if the conveyances in question were made to defendants and intervenor outright and in fee simple, respectively, they were not made to circumvent the usury laws, or for the purpose of having defendants hold the stock in trust.* The court had jurisdiction of the parties and the subject matter of the suit. The judgment quieting defendants and intervenor in their respective titles does no more than declare the full legal import of its findings from the facts in evidence in the light of the issues made by the pleadings. The holdings of the trial court and Court of Civil Appeals upon this question are correct and are supported by the authorities cited and quoted from by the Court of Civil Appeals. In addition see Degetau v. Mayer (wr. ref.), 145 S. W. 1054. The pleadings of defendants and intervenor were not purely defensive in character, but affirmative as well, and the judgment declaring title according to the import of the recitals of the conveyances in evidence, and quieting defendants and intervenor in their respective titles, was responsive to the pleadings and warranted by the evidence.

■ We cannot agree with the contention of plaintiffs that a suit to quiet title is an action that applies only to real estate.

The question raised by the contention has been recently annotated in 105 A. L. R. beginning at page 291. In the course of the annotation it is stated (p. 295) that *"in a few cases* the view has apparently been taken that the right to quiet title or to remove cloud on title is confined to cases of real property, and that a similar remedy does not exist in the case of personal property." (Italics ours.) The annotation points out however that while the remedy is usually invoked in cases of real property, "the *generally accepted view* is that a bill to quiet the title * * * to personal property may be maintained in equity, (even) *in the absence of statutory authorization,* where, *by reason of exceptional circumstances,* there is no adequate remedy at law." (Italics ours.) Numerous cases are cited supporting the rule, including that of the Court of Civil Appeals in the present case. We are in accord with the court's holding to the effect that there appears to be no good reason for restricting the remedy to quiet title to cases of real estate, and that this is especially true in this State where the distinctions between law and equity do not obtain. In Voss v. Murray, 50 Ohio St. 19, 32 N. E. 1112, in an action filed by an attaching creditor of personal property for the purpose of removing clouds created against it, the court says:

"That one who, as an attaching creditor, has acquired a lien upon personal property, may maintain a suit for the purpose of ascertaining the extent or existence of adverse claims to the same property, or removing clouds upon it that would affect its sale in the proceeding, is supported by principle as well as authority. The property being in the custody of the sheriff under the attachment, the creditor has no possessory action against other claimants or lien holders by which the validity of their claims can be determined; and, as they may not choose to institute such an action, he is without any remedy at law, other than to sell the property subject to the clouds upon it, which is not an adequate remedy."

In Earle and Martin v. Maxwell, 86 So. Car., 1, 67, S. E. 962, 138 Am. St. Rep. 1012, in a suit to remove cloud from title to personal property, being a bankrupt's interest in a trust estate, the court says:

"While some authorities hold otherwise, we think there can be no doubt that a complaint to remove a cloud on the title to personal property may be maintained. Pomeroy's Remedies, Sec. 369. Any distinction between real estate and personal property in this respect must be purely artificial and tend to hinder the practical administration of justice. * * * The only

remedy which the plaintiff has to prevent a sacrifice sale of the trust property by reason of this claim is to ask the Court to determine his right to sell before he offers the property. The right and duty of plaintiff to have a fair sale of the property being evident, the Court should not withhold the relief asked."

A case which has particular pertinency here is that of Magnuson v. Clithero, 101 Wis. 551, 77 N. W. 882. This was an action by Sara Magnuson against Electa Clithero and others to foreclose a mortgage on certain notes in plaintiff's possession. A judgment in her favor was vacated on application of the mortgagor. Mrs. Magnuson appealed. Prior to filing the foreclosure suit a divorce was granted Mrs. Magnuson against her husband. By a judgment in the divorce suit final division of the property involved was attempted to be made, but it was later found that the mortgage was so described in the judgment as not to be clearly conveyed. More than a year thereafter Mrs. Magnuson filed an independent action against her divorced husband in which the mortgagor was made a party, which had for its purpose among other things to quiet her in her title to the notes and mortgage. She alleged that it was intended by the divorce decree to transfer the notes and mortgage to her but that the mortgage was incorrectly described in the decree; *that the notes and mortgage were in her possession and claimed by her as her property.* She prayed among other things that the rights of all parties be ascertained and that the divorce judgment be amended to correspond with the facts. The court granted the relief prayed for, holding in effect that the mortgagor could not question her title since it had been established by her independent action, and was not dependent upon the original divorce decree. The mortgagor succeeded in having the judgment vacated upon the theory that the title to the notes and mortgage depended upon the validity of the divorce judgment. Upon appeal the Supreme Court reversed and remanded the case with directions to render judgment in favor of Mrs. Magnuson, saying:

"It is not material to this case or to plaintiff's title to the property whether it was validly transferred by the divorce judgment originally * * *. When the second action was commenced, ostensibly to correct the divorce judgment, plaintiff was in possession of the notes and mortgage, claiming title thereto, *which was liable to be questioned by the mortgagor, Electa Clithero, and by Elias Magnuson as well. In those circumstances a court of equity had jurisdiction to quiet plaintiff's title to the property.* Actions for that purpose are infrequently

brought where the subject is personal property, but the juris-diction of the court in such cases is as well defined and as well understood as where the subject is real estate. Pom. Rem. & Rem. Rights, Sec. 369. Plaintiff's situation was such that she had no way of remedying the mischief growing out of the threatened dispute as to her title, except to appeal to equity for a decree silencing those from whom such dispute might come. * * * The principles of law governing the situation are familiar and simple, too much so in fact to warrant any extended dis-cussion of them. The court having jurisdiction of the subject-matter and the parties, determined the rights of all. * * * So long as that decree stands, respondent and defendant Elias Magnuson, whose rights appellant stands in fear of, are effec-tually estopped from setting up any claim inconsistent with it" (Italics ours.)

The views expressed in the quoted cases with which we are in accord in so far as applicable to the facts of the present case, make it unnecessary to discuss the numerous cases cited by plaintiffs, which have to do largely with possessory actions, or the actions of replevin and detinue. Possession alone of property, the title of which is questionel, does not always afford adequate protection to the one in possession, and does not under the exceptional facts of the present case. See in this connection Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 44 L. ed. 647, 20 Sup. Ct. 559; Yeaman v. Galveston City Com-pany, 106 Texas 389, 167 S. W. 710, Ann. Cas. 1917 E. 191; Turner v. Cattleman's Trust Co. (Com. App.) 215 S. W. 831, and Automobile Mortg. Co. v. Ayub (Com. App.), 266 S. W. 134, which deal with the nature of the property rights evidenced by certificates of corporate stock. Certainly physical possession of the stock in the present case presents no obstacle to the right of defendants to be quieted in their title.

The principles discussed and approved herein apply to uphold the judgment of the trial court in favor of intervenor as well as defendants. They are entitled to the full relief pro-vided by the judgment, and the trial court was not in error in refusing to dismiss the entire case when plaintiffs took their non-suit. As stated by Chief Justice Brown in O'Neal v. Bush & Tillar, 106 Texas 246, 173 S. W. 869, 177 S. W. 953, 191, S. W. 1133, "when the allegations of the petition are sufficient, the court will render such judgment as will meet the requirements of the allegations * * *, without regard to the form of action."

We find no reversible error in the judgment of the Court

of Civil Appeals affirming the trial court's judgment. We accordingly affirm the judgment of the Court of Civil Appeals.

Opinion adopted by the Supreme Court, June 22, 1938.

Rehearing overruled October 26, 1938.